IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT A. RODRIGUEZ, *on behalf of himself and others similarly situated*, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 5:14-CV-00603-RP |
| STAGE 3 SEPARATION, LLC, et al., | § § § | |
| Defendants. | § | |

**ORDER**

Before the Court is the Parties' Joint Motion to Approve Settlement (Dkt. 111). After reviewing the pleadings, the applicable case law, and the case file, the Court issues the following Order.

**BACKGROUND**

This is a putative collective action by current and former employees to recover unpaid overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. On July 5, 2014, Plaintiff Robert Rodriguez filed his original Complaint in the United States District Court for the Western District of Texas. Plaintiff Rodriguez was a "solids control technician" employed by Defendants Stage 3 – a "closed loop solids control company that serves the oil and gas industry" – and Insperity – a "Professional Employment Organization . . . [that] served as Stage 3's human resources department." (Pl.'s Second Am. Compl., Dkt. 105, ¶¶ 4 – 6).

Plaintiff's Second Amended Complaint [*hereinafter* "the Complaint"] alleges that Stage 3 and Insperity are enterprises covered under the FLSA, (*id.* ¶¶ 12, 15), that Plaintiff and other class members are "nonexempt employees . . . entitled to overtime pay," (*id.* ¶ 23), and that Defendants nonetheless paid Rodriguez and the class members "a flat amount per day" with no overtime premium, (*id.* ¶ 24).

The Complaint further alleges Defendants "attempted to conceal their unlawful day-rate payroll," (*id.* ¶ 25), and otherwise willfully violated the FLSA, (*id.* ¶¶ 32 – 34).

This case was conditionally certified as a collective action under 29 U.S.C. § 216(b). The putative class includes:

> All current and former Stage 3 Separation, LLC employees who worked in any of the following positions at any time during the last three years from [March 16, 2015]: Field Techs, Solid Control Tech, Trainee, Tech 2, Tech 1, Service Tech, Site Leader or Field Leader. (Ord. Grant. Mot. Conditional Cert., Dkt. 57, at 3).

The Court further ordered Defendants to provide Plaintiff with the last known names, addresses, and email addresses of potential class members and ordered Plaintiff's counsel to distribute notice via mail and email. In addition to Plaintiff Rodriguez, 163 additional plaintiffs opted to join the case. (Joint Mot. App. Settle., Dkt. 111, at 1).

Plaintiff Rodriguez, on behalf of himself and the 163 additional plaintiffs (collectively, "Plaintiffs"), and Stage 3 Separation, LLC, Fred Lausen, Jr., and Insperity, Inc. (collectively, "Defendants) have jointly proposed a Settlement Agreement (Dkts. 111, 113).

## **ANALYSIS**

The FLSA provides that a suit may be instituted by "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to recover unpaid minimum wages, overtime compensation, and liquidated damages from employers who violate the statute's provisions. 29 U.S.C. § 216(b). This type of collective action follows an "opt-in" procedure in which "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id* .

FLSA claims "may be compromised" after a court reviews and approves a settlement. *See Villeda v. Landry's Restaurants, Inc.*, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009). Courts may approve a settlement if it reflects "a reasonable compromise over issues" that are "actually in dispute." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour*

*Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982). "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action . . . . Rather[,] the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Sims v. Hous. Auth. City of El Paso,* EP:10-CV-109-PRM, 2012 WL 10862119, at *2 (W.D. Tex. Feb. 29, 2012) (quoting *Liger v. New Orleans Hornets NBA Ltd., P'ship,* 2009 WL 2856246, at *2 (E.D.La. Aug. 28, 2009)).

Courts thus evaluate proposed settlements on two dimensions. First, courts determine whether there is a "bona fide" dispute; second, courts determine whether a proposed settlement fairly and reasonably resolves that dispute.

I.   A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE

First, courts determine "whether there exists a bona fide dispute" under the FLSA – for example, a dispute regarding "the amount of hours worked or compensation due." *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014) (citing *Sims*, 2012 WL 10862119, at *2 – 3).

The procedural evolution of cases can demonstrate the existence of a bona fide dispute. *See, e.g.*, *Jones*, 2014 WL 7332551, at *3. Here, Plaintiffs amended their complaint. (Dkts. 1, 21). Defendants moved to dismiss each complaint. (Dkts. 18, 28, 34). Those motions disputed, among other things, the manner of compensation and the amount due. *See, e.g.*, (Dkt. 28). This Court denied each Motion, finding that Plaintiffs had sufficiently alleged claims upon which relief could be granted. (Dkt. 50). Thereafter, the parties reached a settlement after "months of discovery, investigation, litigation, and negotiation." (Joint Mot. App. Settle., Dkt. 111, at 1). Defendants continue to "deny having engaged in any wrongdoing . . .[;] dispute[] Plaintiffs' entitlement to recover any damages; and disagree[] with Plaintiffs as to, for example . . . the number of hours Plaintiffs actually worked." (*Id.*, at 1 – 2).

There is thus a bona fide dispute. *Cf., e.g., Martin v. Spring Break '83 Prod., L.L.C.,* 688 F.3d 247, 255 – 56 (5th Cir. 2012) (finding bona fide dispute where the parties disputed "the number of hours for which [plaintiffs] are owed their set rate of pay.").

If a court finds there is a bona fide dispute, it reviews the settlement agreement to determine whether it is fair and reasonable. *See Jones*, 2014 WL 7332551, at *3 (citing *Sims*, 2012 WL 10862119, at *3).

"Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires court approval to finalize a proposed class action settlement." *Sims*, 2012 WL 10862119, at *3. "Thus, the Rule 23(e) standard encompasses the 'fair and reasonable' settlement standard of the FLSA collective action, and cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action." *Altier v. Worley Catastrophe Resp., LLC*, 2012 WL 161824, at * 14 (E.D. La. Jan. 18, 2012). The Fifth Circuit propounds six factors for evaluating settlement proposals:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

First, the Court evaluates whether the settlement was the product of fraud or collusion. There is no evidence before this Court of fraud or collusion. Additionally, the parties attest that they "engaged in arm's-length and extended settlement negotiations, including a full-day mediation." (Joint Mot. App. Settle., Dkt. 111, at 1). The Court thus finds that the first factor favors finding a fair and reasonable agreement.

Second, the Court evaluates the offered settlement in light of the complexity, expense, and likely duration of the litigation. This case was filed in July 2014. Though it is more than a year old, it is still in its preliminary stages due to good-faith disagreements at each stage. The live complaint was not filed until

July 2015. Defendants maintain that they enter into this agreement as a "compromise of disputed claims," to "avoid the risks, distractions and costs that will result from further litigation." (Joint Mot. App. Settle., Dkt. 111, at 1 – 2). The Court thus finds that the second factor favors finding a fair and reasonable agreement.

Third, the Court evaluates settlement in light of the stage of the proceedings and the amount of discovery completed. Though this Case is still in preliminary stages, the Parties have litigated significant issues including dispositive motions and collective action certification. They have exchanged significant discovery. And they have participated in mediation. The third factor thus favors finding a fair and reasonable agreement.

Fourth, the Court asks whether there are any obstacles to the merits of the case. "Aside from the contentiousness of the suit," *Jones*, 2014 WL 7332551, at *4, neither party has provided an "obstacle to the merits of the case." The fourth factor thus favors finding a fair and reasonable agreement.

Fifth, the Court evaluates the proposed Settlement Agreement against the possible range of recovery and the certainty of damages. Plaintiffs and Defendants disagree about:

> Plaintiffs' entitlement to recover any damages . . .[;] the number of hours Plaintiffs actually worked; whether Plaintiffs were paid overtime for any hours worked over forty in a workweek; whether per diem payments to Plaintiffs should have been included in their regular rates for purposes of overtime payment; whether Defendants' alleged FLSA violations were made in good faith . . . [or] were willful; and Plaintiffs' status as 'employees' of Insperity. (Joint Mot. App. Settle., Dkt. 111, at 1 – 2).

Against these disagreements, the Settlement Agreement proposes depositing a settlement amount into a Qualified Settlement Fund ("QSF") within ten days for distribution to Plaintiffs and Plaintiffs' counsel in accordance with the Settlement Agreement. The award received by each Plaintiff is a sum certain to be administered at a time certain. (*See generally* Settlement Agreement, Dkt. 113 (Sealed Docket Entry)). Thus the fifth factor, contrasting the broad and uncertain range of potential damages and recoveries with the definite and certain result of the proposed Settlement Agreement, favors finding a fair and reasonable agreement.

Finally, the Court evaluates the respective opinions of the participants, including class counsel, class representative, and the absent class members. When reviewing settlement agreements, courts are "entitled to rely upon the judgment of experienced counsel for the parties." *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977). In this case, "[t]he Parties and their counsel agree the Settlement Agreement is a fair and reasonable compromise of the claims alleged by Plaintiffs in light of the procedural posture of the case, the litigation risks and the costs applicable to all Parties." (Joint Mot. App. Settle., Dkt. 111, at 3). All Parties are represented by experienced counsel. (*Id.*). With regard to "absent class members," potential plaintiffs who have not opted into suit do not waive their individual rights as a result of the Settlement Agreement. Accordingly, the sixth factor favors finding a fair and reasonable agreement.

Applying the six factors laid out by the Fifth Circuit, the Court thus finds that the Settlement Agreement is fair and reasonable.

## II.   ATTORNEY'S FEES

The Settlement Agreement requests that Plaintiffs' counsel be paid a percentage of the total Settlement Fund as fees for their work. The parties have agreed that Plaintiffs' counsel may apply to the Court for an award of forty percent of the gross settlement amount. The Settlement Agreement adds that forty percent is "pursuant to a contingency arrangement in the Professional Services Agreement between the Plaintiffs and the Plaintiffs' Counsel." (Joint Mot. App. Settle., Dkt. 111, at 4).

"[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees." *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir.1998). The Court thus addresses multiple questions – first, the propriety of determining attorney's fees as a percentage of the total award to plaintiffs

rather than, for instance, as a function of hours worked at an appropriate rate of pay; second, insofar as fees may be calculated as a percentage of the total Settlement Fund, the Court addresses what percentage is appropriate.

As a preliminary matter, "use of a common fund to pay attorney's fees in class action settlements is well established." *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 673 (N.D.Tex.2010). However, courts must "carefully scrutinize the attorneys' fees award in a common fund settlement because the interests of the attorneys conflict with those of the class[ ]." *Id.* Courts are not "bound by the agreement of the parties as to the amount of attorneys' fees." *Id.*

Plaintiffs request that attorney's fees be calculated as a percentage of the common fund. Specifically, "Plaintiffs believe a fee of forty percent is reasonable." (Joint Mot. App. Settle., Dkt. 111, at 5). The Supreme Court has blessed the percentage method in common fund cases, *Jones*, 2014 WL 7332551 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)), and courts in the Fifth Circuit have applied the method, s*ee id.* (citing *Schwartz v. TXU Corp.*, No. 3:02-cv-2243, 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005)). The percentage method, however, is appropriate only so long as the "*Johnson*" framework is utilized to ensure the fee is reasonable. *Strong*, 137 F.3d, at 851 – 2 & n.5. Within the Fifth Circuit, that framework, set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), is applied to a "benchmark" fee to determine whether deviations from that fee are appropriate and reasonable. *See Klein*, 795 F. Supp. 2d, at 674.

    a.   The Benchmark Fee

The Settlement Agreement seems to suggest a benchmark fee of 40%. Defendants do not oppose, and Plaintiffs' counsel maintain that their fee arrangement with Plaintiffs suggests, attorney's fees calculated as 40% of the total Settlement Fund.

To support the fee, the parties suggest that 35 to 40% is the "customary contingency" in the Fifth Circuit. The parties additionally cite precedent suggesting that "the most critical factor in determining a fee award is the degree of success obtained," *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003), and argue that "[t]he degree of success here is high because Defendants vehemently deny [] that the Plaintiffs were improperly paid . . . and the Plaintiffs have litigated in excess of one year before the matter could be settled through mediation." (Joint Mot. App. Settle., Dkt. 111, at 5).

Though Defendants do not oppose a 40% fee and Plaintiffs allegedly agreed to pay 40%, the Court must "carefully scrutinize the attorneys' fees award in a common fund settlement because the interests of the attorneys conflict with those of the class[ ]." *Klein*, 705 F. Supp. 2d at 673.   Defendants have no incentive to police attorney's fees subtracted from the fixed Settlement Fund; and the Fifth Circuit has repeatedly held contingency fee agreements between attorneys and their clients are not beyond judicial control. *See, e.g.*, *Karim v. Finch Shipping Co. Ltd.*, 374 F. 3d 302, 309 (5th Cir. 2004) (noting federal court's "well-recognized power" to reform contingent fee contracts).

A review of Fifth Circuit precedent suggests a benchmark fee of 30%. Contrasted with the parties' proffered 40%, "[t]he *Manual for Complex Litigation* states that '[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund.'" *Klein*, 705 F. Supp. 2d at 675 (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (2010)). "The majority of common fund fee awards fall between twenty and thirty percent." *In re Harrah's Entm't, Inc.*, No. Civ. A. 95 – 3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998). Indeed, the Settlement Agreement's cited appellate case supporting a "customary" fee award between 35% and 40% did not adopt the district court's assertion that such a rate was customary and in fact approved only a 30% award. *Vela*, 276 F.3d at 681.

Because a benchmark fee of 30% is more common and the parties have not proffered exceptional circumstances that justify raising the benchmark and thereby reducing Plaintiffs' recovery, this Court applies a benchmark fee of 30%.

b. The "*Johnson*" Factors

The Court next considers the so-called *Johnson* factors to determine whether a deviation from the benchmark percentage is appropriate. *Klein*, 705 F. Supp. 2d at 676. *Johnson* set out twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Not every factor need necessarily be considered, and not every factor is applicable to a case seeking an attorney's fee award out of a common fund. *Jones*, 2014 WL 7332551, at *8. This Court will highlight the factors it considers most relevant to the Settlement Agreement.

With regard to the first factor, the time and labor required, the Court acknowledges that this case has consumed significant time and required significant labor. This case has been pending for over a year. During this time, Plaintiffs' counsel have amended the complaint and dealt with Defendants' Motions to Dismiss. Counsel succeeded in conditionally certifying the class. Counsel participated in mediation on behalf of 164 plaintiffs. These procedural steps suggest that Plaintiffs' counsel diligently represented the plaintiffs and invested significant time and labor on behalf of Plaintiffs. Though Plaintiffs' counsel undoubtedly have expended time and labor, they have not argued that the time and effort expended is extraordinary relative to the time and effort expended by other lawyers in similar FLSA cases. Absent such a showing, the first factor counsels that Plaintiffs' attorneys are adequately compensated by a 30% fee. *Cf.*

*Jones*, 2014 WL 7332551, at *8 (citing *Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 532 (N.D. Miss. 2003)(finding a 25% fee award to be appropriate)).

The second factor analyzes the novelty and difficulty of the issues raised. The issues presented at this stage of the litigation were not so novel or difficult as to differentiate this case from other FLSA actions, and do not counsel deviating upward from the benchmark fee. Nor do the third, fourth, and fifth factors justify deviating from the benchmark fee. The third factor evaluates the special skill required to manage a case of this nature. Though this case requires knowledge of and familiarity with the FLSA, counsel have not argued that the requisite degree of skill is inadequately compensated by the 30% benchmark fee. The fourth factor evaluates whether counsel was precluded from accepting other engagements as a result of managing the present case. Counsel have not argued that they gave up any representations to litigate the present action, and thus this factor does not justify deviating from the benchmark fee. The fifth factor – the customary award – counsels in favor of attorney's fees around 30% of Plaintiffs' recovery.

The sixth and seventh factors do not influence this Court's decision. The parties highlight the eighth factor as the factor that justifies a high recovery. With regard to the eighth factor, counsel argue that a high fee award is justified because of the amount of recovery and the degree of success obtained. In full, the parties state "[t]e degree of success here is high because Defendants vehemently deny [that the] Plaintiffs were improperly paid, underpaid, or that any alleged damages are owed, and the Plaintiffs have litigated in excess of one year before the matter could be settled through mediation." (Joint Mot. App. Settle., Dkt. 111, at 4 – 5).  While the Court agrees that the Settlement Agreement is fair and reasonable in light of a bona fide dispute, the Court is not persuaded that the recovery is so exceptional as to merit significantly heightened recovery for Plaintiffs' counsel at the expense of money that otherwise goes to

Plaintiffs. The parties do not show, by anecdotal comparison or empirical analysis, that the recovery attained is exceptional among similarly situated cases. Accordingly, the eighth factor counsels in favor of attorney's fees around 30% of Plaintiffs' recovery.

The Court has discussed the twelfth factor at length. Relative to awards in similar cases, a fee award of 30% is customary and appropriate. Finally, the Court has insufficient information to determine whether the ninth, tenth, or eleventh factors justify an additional 10% fee for Plaintiffs' counsel from the total Settlement Fund.

In light of the foregoing, the Court finds that a 30% attorney's fee award from the Settlement Fund is appropriate.

### III.    NAMED PLAINTIFF SERVICE AWARD

The Settlement Agreement finally proposes a "Service Award" of $7,500 to named plaintiff Robert Rodriguez. The award "is intended to recognize his initiative and efforts on behalf of the workers and his execution of a broad release." (Joint Mot. App. Settle., Dkt. 111, at 5).

Courts approve service awards for named plaintiffs and class representatives insofar as they are reasonable. *See, e.g.*, *In re Wells Fargo Wage & Hour Emp't Pract. Litig. (No. III)*, 18 F. Supp. 3d 844, 852 (S.D. Tex., 2014). Here, Plaintiff "was subject to extensive written discovery, was deposed, provided information helpful to the case, and otherwise contributed to the overall litigation." (Joint Mot. App. Settle., Dkt. 111, at 5). In light of this active participation, an award of $7,500 is reasonable. *Cf. Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving "incentive compensation to named plaintiffs" because "Plaintiffs' commitment undoubtedly led to the proposed settlement fund").

### **CONCLUSION**

The Court GRANTS IN PART the Parties' Joint Motion to Approve their Settlement Agreement. The Court approves the Settlement Agreement in all respects except the amounts to be paid in attorney's fees. The Court REDUCES the amount requested in attorney's fees in accordance with this Order.

The Court further DISMISSES this case WITH PREJUDICE.

All relief not expressly granted is hereby DENIED.

**SIGNED** on December 23, 2015.

_____

ROBERT L. PITMAN

UNITED STATES DISTRICT JUDGE